Good morning, your honor. I represent the appellants in this case. We are here in this very long-standing case that I think has blessed this court before in several different iterations to basically address the partial final judgment by the approval of the consent decree for the Alternative Water Administration as well as a creation of a rural water system and some other items that are included in that settlement. This is kind of deja vu for me since I sat in a seven-week trial on related issues in Colorado during the Rio Grande Compact litigation, which is also to some degree implicated here, but nothing that struck me as disqualifying for my presence on the case. Let me say that for you, for the benefit of all of the parties. Now, let me ask you this. The doctrine of prior appropriation in New Mexico is certainly not altered in any way by this case, is it? Your honor, it has an effect. So we're talking about the doctrine versus the effect, and that's when we get into the problems. Well, I didn't see the problems. So you're going to have to, let me tell you, you have to persuade me that there's the limitation on use under the priority doctrine. It would seem to me that it would be against the tribes, the Pueblos, and not against other users on the priority list. No, your honor. In fact, if you look at the United States briefs, their initial briefs, I believe at page 28 and 31, admit that people who are non-Pueblo users who are more senior to other junior non-Pueblo users can actually have their rights impaired because of the way this agreement will work. And so that is one of the heightened concerns that we have. Well, the status quo ante was the utilization of the basin to such an extent that it basically left virtually no water for non-senior users, correct? That is, the Pueblos had over-appropriated the basin. Yes, your honor, at times. All right. So the government, let me make sure I understand the facts. The government steps in and says, we will seek to augment the water supply to the basin. Am I right in that statement? Yes. All right. And that the priority administration of water rights within the basin will continue, as it was the status quo ante. Is that statement correct? Not exactly. All right. So one of the things that occurred was after, and I need to kind of circle back a little bit. I'm just trying to determine how you're hurt. I think I can help that in a couple of... The forbearance of my colleagues. So a couple of, I think, discrete ways. Going back to the basic premise here is that the agreement itself is not an appropriate agreement. And the reason is because it is an agreement is a compact between sovereign entities without the approval of the legislature in New Mexico. Now, what happens because of that... Well, in the case of interstate compacts, there's clear legislation and constitutional provisions on that. What is the New Mexico constitutional provision that mandates the legislative action on the part of compacts? And why is this a compact at all? We're going to first, we get to, as we said in our brief, New Mexico statute 72-1-12. That particular provision talks about the funding of any types of Indian settlement agreements. Any agreement that's going to be funded through these systems must be approved by the legislature, and that didn't happen. Now, in addition, let's look at it this way. The reason our people are harmed in particular is many of our folks who did not join the settlement agreement didn't do it because it wasn't approved by the legislature. Their rights aren't impaired by the agreement, are they? Yes, actually, Your Honor. And if you're looking, it's a kind of a reverse argument in one part, and I'll get to the second part. I've got to make sure I understand this because I'm deciding, we're deciding the case, right? Yes, Your Honor. So there is a limited supply of water in the basin. Yes, of course. That's a given. And under that limited supply, the senior rights of the Pueblos are such that they can utilize the entire supply legally and leave no supply for junior users, correct? I don't think that is the case. That is not how all the individual adjudications came out. So you'd have to look at the individual rights of the different parties. The Pueblo does have the prior use, but not the 100% use. So there are non-Pueblo junior users. The problem is it has changed the relationship between the senior and junior non-Pueblo users versus the Pueblo, and that's where the real rub comes in. That's where the problem occurs, and that's what's volatile here. But on top of it, there are many people who didn't sign on to this agreement who otherwise would have if it had been approved by the legislature. They were denied, you know, under property law, you have the right to hold your property, to dispose of your property, to give it away, to transfer it, what have you. Many people were denied the right to actually transfer some of their interests away under the terms of the settlement agreement because of the concern that the agreement was not legal. For example, if you had reduced your water right and then there was an adjudication of that reduced right, and then the legislature said, you know what, we don't like these aspects of the settlement agreement. We're not going to fund this or we're not going to fund it at those levels. We're not going to do that. Then the question would be, do those rights that were transferred away to become part of the settlement agreement that is never fully affected, do they come back to the people? They don't. So the problem is that the illegality of the agreement, because it was not approved by the legislature, creates a problem where their rights have actually been Basically, they were told either agree to the settlement, have some of your rights taken away, and engage in a legal agreement or... The state of New Mexico does not have the right or the power to alter the adjudications of priority use on the stream. Your Honor, the problem is that... No, isn't that correct? I mean, the state of New Mexico can't say, okay, we're going to go ahead and realign priorities. Or require administration that is inconsistent with the doctrine of prior appropriation. Well, Your Honor, here's the problem. Only after the lower court issued a decision in July, then the state engineer's office went forward and two months later passed another rule that impacts the overall settlement agreement. That was never considered by the lower court. It was not raised by any of the parties as an issue of mootness here. So to look at what happened two months after the decision of the lower court, it's really not properly before the court at this point. Now, in a variety of places in the different briefings, party after party has admitted that the future rights of these folks can be impacted. There will be future calls, and these folks will be impacted. Is there an integration of the groundwater surface water use under this agreement? Your Honor, the agreement... I understand the agreement affects both, yes. Has there been rulemaking on that administration? Your Honor, it is starting, but like I said, there was one rule that was passed on, I believe it was September 12th of 2017, two months after the ruling. The problem is... Was there proper due process notice given under the rulemaking for that administration? Your Honor, it's only started. It's not complete. So it's in process. But again, those are all after the fact. The problem was when the agreement was approved by the court, initially, the court didn't look at the required legal standards. Under U.S. versus Colorado, it is more than just a fair and reasonable standard as to the parties who engaged in the agreement itself. They have to look at public policy, equity, and other parties that are harmed. That did not occur. So even if the agreement were okay, the problem was as it was approved by the lower court, it didn't look at the legal standards necessary and required under U.S. versus Colorado and other similar cases. And finally, and then I'll finish my questions, how are your party's clients adversely affected? So Your Honor, one of the problems that we have is that the government has, the governments have given a variety of examples of how they may not be harmed and how they might be harmed. That requires a factual development that was never done. There is no factual record in this case to rely on any of the representations of the legal argument. What do you claim in the manner in which your clients have been adversely affected? So as I looked at hypothetical examples, I'll give you one. So you have three users, 1950, 55, and 60. No, I'm sorry, 1850, 55, and 60. And then you have another user from 1900. Let's say the Pueblos are the earliest user. Right. And then my people, for example, is an 1855 user. And then you have a junior user that's 1900. But the junior user entered into the settlement agreement, and therefore they can share and commingle. Well, the Pueblo, let's just say that it never used 100% of its rights. It losed about 25 or 30. But in a low water year, they know that the junior user of 1900 isn't going to get any water. So the Pueblo makes a call for more water, they could, even though they've never had to use it before, and give it to those other junior users. That's the marginalization of the parties. But how does that impact you when you never had the right to use it to begin with? They got that right because they entered into the agreement, but they didn't have a right to it either. And nothing's changed for you. You never did have a right to it. But Your Honor, there never was 100% right. There have been determinations and adjudications of water rights out there. And people do have adjudicated rights. Whether or not they're part of the settlement agreement, there has been adjudication of all the rights out there. And it hasn't been, no, you have absolutely no rights at all. So there has been rights to water. That's, I didn't mean to say it that way, I guess, but I'm still struggling to figure out how you are actually harmed. And I guess not just any harm, but specific harm, and not just specific harm, but how about the plain legal prejudice that the district court said was required for you to challenge or to have standing to challenge the settlement agreement, and then you ignored that on appeal. And at this point, we've asked you to supplemental brief. And even in the supplemental briefing, you concede you've never proved plain legal prejudice, and you didn't argue against it. So I'm confused in terms of standing. You seem to have conceded there's no plain legal prejudice proven here. So if we apply that, which is what the district court said, you've waived any arguments you have to make. Your Honor, with regard to the plain legal prejudice, when we did the supplemental briefing, we argued that that particular test really should not be incorporated into water law because it's very disparate. When you look at the primary cases looking at it, the class action lawsuits and the protections of the Federal Rules of Civil Procedure under Rule 23. The place to make that argument would have been in your opening brief, or certainly down below when you didn't object when the district court said plain legal prejudice applies. Your Honor, back in 2007, the courts have ruled that there was standing for the objectors to bring these issues forward. So it was a 2007 decision. What difference does that make? That there has always been standing under New Mexico law. And I do have to apologize. We're at three minutes. So I am going to take a break for a moment. So we have a few moments for rebuttal. Thank you. May it please the Court. John Smeltzer for the United States. I'll be sharing time evenly with Greg Ridgely, Counsel for the State of New Mexico. Your Honors, we, all of the settlement parties in this case, the State, the United States, the Pueblos, the County and City of Santa Fe, and the private water users who were represented on appeal by the Rio de Tosuque Association, asked this Court to affirm the final judgment and decree of the district court in this long-standing litigation, including the approval of the settlement of the Pueblos water rights. What is the manner in which you propose, under which you agree to augment the supply to the basin? As part of the settlement agreement, there are agreements by the United States and this County of Santa Fe to provide money and water rights to create a... No, I understand. That's all very nice in the theory. But I mean, how in fact are you going to do that? By providing the money and providing the water rights? The settlement agreement says... Are you going to import water into the basin? That's right. Your Honor, there's water rights from the San Juan Chama project, from the Top of the World farm, both that were acquired by the United States and by the County of Santa Fe, and the reserve right of the Pueblo Nambe is being contributed towards providing water for a municipal water system that will serve private owners in the area and the Pueblos. Counsel argued that her client stood to be injured by virtue of the fact that the agreement appears to give the Pueblos the right to place a call on water on the stream that they have a right to, but historically not necessarily used, and then to share that water that is appropriated with outside of priority with other signers of the agreement, but not the priority list itself. Is that correct? Well, Your Honor, if it's shared water within the priority right that belongs to the Pueblo, it would not be out of priority administration. It's water that the Pueblos use. It's certainly bypassing the priority list to allow a senior user to pick favorites and send water out of priority to a junior to the sufferance of an intermediary person on the priority list. If that's true, which she says. Well, it's not picking favorites, and the way priority administration would work is if the Pueblos seek priority administration of their rights, the state engineer would then determine through their rules which rights would be curtailed. What we explained in our brief is that it's possible that where there's a circumstance where junior users can use because of a settlement agreement, that that doesn't mean an injury to, say, the middle users. If Pueblos are senior and then you have junior water rights users and non-settling parties have the middle priority date, that's not an injury to their rights if it doesn't change the fact that they would have been curtailed in any event as a result of the senior Pueblo right. What the parties agreed to as part of the settlement was specifically that the state engineer would act as water master for the administration of the Pueblo rights and all private rights, including the non-settling party rights, and they would agree to rules of administration for caring for those responsibilities. Have those rules already been promulgated? Yes, Your Honor. Do those rules allow a senior user to transfer or share water with a junior to the sufferance of intermediary appropriators? Well, I can tell you what the rules say and then explain what they mean. Again, when there's enforcement of a right, the person who seeks enforcement doesn't specifically pick and choose who they're going to enforce the right against. They ask for enforcement. And what the rules specifically say, and we're talking about New Mexico, that's the first one. There's two sections, but that one says non-settlement parties' water rights shall only be curtailed under Pueblo alternative administration to the extent such curtailment would occur without the settlement agreement. So what that means is there can be no additional curtailment of non-settling parties' rights as a result of the alternative administration rules that the Pueblos and the United States and some of the groundwater users have joined the settlement agreed to. The second applicable rule is at section 19.25.20.119E, and that says, quote, that non-settlement parties seeking priority administration shall have the same rights and benefits that would be available without the settlement agreement. And that means they have the ability to seek priority enforcement in accordance with regular rules of priority administration. But how is the state engineer, if the state engineer is going to administer this water regimen, and there is actual water in the stream that is going to be taken by a person who is sharing the water, it seems to me that if there's water in the stream and somebody's in priority, they could place a call on that water under normal priority administration irrespective of any agreement as to the use of that water. Is the stream going to be used as the conveyor, or is this going to be tailwater? First, I want to be clear that the only provisions of the settlement that are at issue involve groundwater, and they do not involve diversions from streams. So it's a question of whether there's enforcement against groundwater, which presents its own unique set of circumstances. And that's what I asked before. Have those groundwater rules been promulgated at this point? Well, what the rules are are the rules that I read, and those are the rules that say that their rights are exactly the same as they were and will be regardless of what the parties agreed to in the settlement. And the issue comes up then, well, first let me say that one of the purposes of the settlement was to bring water into the system to put less pressure on groundwater use so that it's less likely that there will ever be a call on groundwater users. Of course, if there is ever a call on groundwater use, it will be in a circumstance specific to a particular Pueblo or particular Pueblo's rights, and then a particular set of water users, whether they're upstream from the Pueblo, they would have to be in order to be called on to satisfy the Pueblo's rights. So then there's hydrological mechanics that would have to come into play. And all we're saying is if that happens at that point, the state engineer then has to decide through the accounting rules how to apply these particular procedures. The rules tell the state engineer that he cannot curtail the rights of non-settling parties in any way that he didn't already have the authority to without the settlement. The rules tell the state engineer that the non-settling parties have their full rights of ability to enforce priority against all junior users. So they have essentially... Your half the time is up. Thank you, your honor. I appreciate it. I would yield to Mr. Ridgely. May it please the court. Good afternoon. Greg Ridgely on behalf of the state of New Mexico. Let me just finish off on the point that we were... Yes, your honor. ...with your colleague. In the case of the groundwater, is that a separate priority list under New Mexico law? Your honor, with respect to your earlier question, under the state engineer's rules governing the administration of water rights in this basin, all service and groundwater rights will be managed in a conjunctive manner. In your words, an integrated system of administration. Let me see if I'm clear about that. So the groundwater is being treated for purposes of distribution as though it were a free-flowing surface stream. Is that right? Your honor, yes. All surface water and groundwater rights are administered in priority in New Mexico where there are hydrologically connected... where aquifers are hydrologically connected to streams. And that's the case in this basin. Excuse me. I wanted to start... Well, I'm sorry, your honor, your... Judge Lucero, your question goes to whether water rights... Well, could you repeat your question you wanted me to... Yes, with respect to those groundwater rights, I just wanted to satisfy myself that as the administration of those groundwater rights, absent any agreement would have existed, the priority system would operate freely as between the two units. That's a pretty complicated freely, but that's the way it works. Does the compact or this, not compact, but this agreement, the settlement agreement, alter that priority administration? Your honor, no. As I think Mr. Smelter answered correctly to that question, the settlement agreement is between the parties, the Pueblos and the settling parties have agreed to it. In effect, the state engineer through his rules has made clear that he will administer water rights according to priority administration and in the special case of the settling parties, according to their agreement to share. Water rights that are in the time of a call by the Pueblos, the water master will determine which water rights need to be curtailed and they will be curtailed. Then the Pueblos, their agreement will be treated as an agreement to share water with the settling parties who are being curtailed. I don't understand how you can do that to the non-settling parties. And that goes to your question earlier, your honor. The non-settling parties are not harmed by that sharing. As Mr. Smelter made clear, on their face, the rules expressly prohibit a type of harm that appellants are raising, the hypothetical harm they're raising here today in that point. But how it would work is that the Pueblos, in effect, are agreeing to share water. Those settling parties will be allowed to divert water that is being shared with the Pueblos water right. That is not at the expense of the non-settling parties. They are not harmed because they have no, and I think Judge Moritz, your question went straight to this, they have no right to the water that is being shared with the settlement parties. Their rights as non-settlement parties are junior to the rights of the Pueblos. So they, even Judge Lucero, if they made a call, it would be ineffective as to the water being shared by the Pueblos with the settlement parties. Because that water is under the Pueblos water right, which is senior to the water rights of the appellants who are complaining today about this arrangement. Your Honors, I had two main points I wanted to make to you today about New Mexico state law. First, the settlement agreement is in accordance with New Mexico law, as the district court correctly ruled, and appellants have not shown otherwise. And second, to the extent appellants are alleging that future administration in times of shortage might harm their water rights, they're wrong. With respect to the first point, there's really three sub points there. Our constitution and water code allow alternatives to strict priority administration of water rights in times of water sharing. The New Mexico Attorney General's express statutory authority to settle Indian water right claims raised in water rights adjudications does not offend the separation of powers. And the New Mexico Indian water right settlement fund act, of which the appellants discussed with you before, does not require the legislature to approve Indian water rights settlements. With respect to the second point, and we've talked about that a little bit already, water master administration of water rights in this basin will be governed by, not by the settlement agreement, but by the rules promulgated by the state engineer. And Judge, you asked earlier, that promulgation is complete. There was full due process afforded to the public opportunity to comment on the rules and participate in that rulemaking process. Those rules promulgated pursuant to the state engineer's statutory authority, that was what will govern any and all administration of water rights in this basin. And on their face, appellants cannot show, on their face, those rules expressly protect appellants against the kind of hypothetical possibility of injury that they're raising here. To the point about New Mexico water law, we have the Lewis case that makes clear that our constitution and water code do not require strict priority enforcement as the sole and exclusive means to resolve water shortages when senior water right earners can be protected by other means. And that's what's going on with this settlement agreement, that the administration provisions of which are being implemented under the state engineer's authority. Our water code gives the state engineer broad authority to manage the distribution of our state's waters, and that has been upheld many times over the decades by our courts. And under this broad delegation of authority, the state engineer promulgated what are called active water resource management rules that govern the distribution of water across the state. They allow what's called alternative administration based on water sharing, precisely what this settlement agreement contemplates. And those rules were upheld by our Supreme Court as constitutional in 2012. I think I'm running out of time. We ask that this court affirm the district court's... I just ask that you affirm the district court entry of the partial final judgment and decree. Thank you very much. Thank you. Thank you. All of the impacts flow from the actual agreement. So the question that has to be answered first is, was the agreement a valid agreement? They've argued that the very general authority of the attorney general's office to sign off on random settlements is sufficient in a water rights situation when we involve sovereigns. Now, if you look at Clark versus Johnson, for example, even in that case, it states 20 years ago that since 1923, 22 different combats with sovereigns have been entered into, including interstate water usage. We're talking about an agreement between sovereigns here. Pueblos are sovereigns. The New Mexico is a sovereign. So to allow the attorney general to overstep that authority, to take the general authority delegated to him by the legislature to engage in settlements or criminal matters and civil matters where the state is being sued for a personal injury case, throws the concept of water settlements on its head in New Mexico. Well, do you argue that it requires the approval of Congress? No, of the state legislature, Your Honor. I understand. But why wouldn't that be a congressional matter rather than a state matter if these are sovereigns? Your Honor, again, New Mexico can enter into agreements with Texas, for example. Would anyone argue that the attorney general's office was able to enter into the settlement agreement with the state of Texas with regard to water administration? That's never been raised before. The same thing with Colorado. The same thing with Pewaukee Valley. At this point, we have a problem with the attorney general overstepping the general settlement authority and not giving effect to the will of the legislature, which is broad versus the limited authority delegated down to the attorney general to engage in these types of settlements. So the question that has to be answered is, is the agreement a valid agreement in the first instance? If it was a valid agreement, if many of our folks could have entered into it because they did not believe it was a valid agreement, we wouldn't be here today. And then I have to ask, what's the harm? What is the harm with having a water rights settlement that's going to impact the entire north of New Mexico? It's going to impact communities and traditional, as Secchia's, the use of water irrigation. While it is groundwater, it is irrigation waters. This affects farming and the lifestyle of everyone up there. But when you have an agreement specifically between the sovereign entities of the pueblos, we need to respect that sovereignty and it should be approved by the legislature. That's what the law calls for here, especially when it's Indian water rights. Those funds cannot be used unless the settlement agreement is approved by the legislature. That's what New Mexico Statute 72-1S12 says. I'm almost out of time. Thank you. Thank you, counsel. The case is very well argued, very well presented. Thank you very much. The case is submitted. Counsel are excused.